Tayior, Chief Justice
 

 This case calls upon the Court, for the second time, for a construction of the act of 1816,
 
 ch.
 
 918. which abolishes the punishment of burning in the hand in clergiable felonies. The nature of this
 
 *188
 
 appeal has rendered it indispensable that the former °P^n^on should be carefully reviewed and reconsidered; and I have done-so, under a perfect disposition to pronounce the result of my present conviction, uninfluenced by any former opinion on the question.
 

 It may bo readily conceded, that a literal
 
 construction
 
 of the words of the act will justify the infliction of whipping on a conviction of manslaughter; but is the Court bound to give a literal construction to a statute, when they are thoroughly convinced that, in doing so, they will contravene the intention of the legislature? The answer may be made in the language of the law, that a statute should be so construed, as will best answer the
 
 intent
 
 the legislature had in view; and this intention is sometimes to be collected from the cause or necessity of making the statute, and, sometimes, from other circumstances. This intention, whenever it can be discovered, ought to be followed with reason and discretion in the construction of the statute, although such construction seem contrary to the letter of the statute. A thing which, is within the intention of the maker of a statute, is as much within the statute, as if it were within the letter; and a thing which is within the letter of a statute, is not within the statute, unless it be within the intention of the makers. (Bac.
 
 Abr. tit. Statutes.)
 
 The latter rule applies forcibly to the cases where the Court is required to pronounce a punishment as incurred by a crime, whicli they do not think the legislature intended to annex to it.
 

 II it should be inquired, as it naturally will, why the persuasion should be so thorough, that the legislature did not intend that the crime of manslaughter should be punished by whipping; the answer is, that from the early period of our law, when a distinction was established between murder and manslaughter, by the introduction of the benefit of clergy, the latter offence, though felonious, has been considered as flowing from the frailty incident to human nature. It is the result of 4 temporary suspen
 
 *189
 
 sion of the reason, induced by a provocation which the law deems legal. No disgrace, or opprobrium, ever has been, or is now, attached to the character of the man who commits it. The law has, in its policy, always denounced against him the forfeiture of his goodsjas a punishment, because the violent death of a human being, however produced, was too serious a thing to be passed oyer without animadversion. But the burning in the hand, so far from being a punishment, restored the party to credit and capacity. Tie ceased to be a felon, and was restored to all his legal rights and privileges; he was purged from bis
 
 guilt by
 
 the privilege of clergy, which operated as a statute pardon.
 

 To the other clcrgiable felonies, there was an original infamy attached, from which, however the statute pardon might restore the party to his legal rights, his character could not be cleansed.
 

 A convicted thief, although pardoned and admissible as a juror or witness, has irrecoverably lost his
 
 caste in
 
 society.
 

 As a punishment, burning in the hand was too slight; but whipping, though it could give no additional infamy to the crime, might deter others from the commission of it.
 

 There was, too, an evident absurdity in whipping for a larceny, where the thing stolen was under the value of a shilling, and burning in the hand, where it was over that value. This was removed by the act, which punished both crimes by the same measure.
 

 In the case of manslaughter, however, the benefit of clergy restored the party to his legal right, and, In so doing, its operation was full and complete; for no crime had been committed, which affected his moral estimation. “ We now consider,” says Justice
 
 Foster, “
 
 the benefit of clergy, as a relaxation of the rigour of the law, a condescension to the infirmities of the human frame. And therefore, in the case of all clergiable felonies, we now measure the degree of punishment by the real enormity
 
 *190
 
 of the offence; not as the ignorance and superstition of former times suggested, by a senseless dream of sacred persons on sacred functions.”
 

 It appears to me, that in legislating on this subject, the first object was to get rid of the disgracing practice of burning in the hand; because the reason of its introduction had altogether ceased, which was to distinguish laymen from priests, that the former might not claim clergy a second time; and because it was too slight a punishment in larceny, and too disgraceful a ene in manslaughter. That the words,
 
 “
 
 moderate pecuniary fine,” used in the act, were intended to apply to manslaughter; the
 
 “
 
 one or more whippings,” were applicable to larcenies; and “in tiie discretion of the Court, under the circumstances of the cáse,” import a legal discretion, to be exercised with a view to the maxims, rules, and principles of criminal jurisprudence, and the moral sense and habitudes of the citizens.
 

 It is mentioned by w’riters on the criminal law; as one of the glories of the system, that the species, though not always the quantity or degree of punishment, is
 
 ascertained
 
 for every offence, and that it is not left in the breast of any Judge, nor even of a jury, to alter that judgment which the law has, beforehand, ordained for every citizen alike, without respect of persons. For if judgment were to be the private opinions of the Judge, men would then be slaves to their magistrates, and would live in society without knowing exactly the conditions and obligations which it lays them under. (4
 
 Bl.
 
 317.)
 

 The construction contended for on behalf of the state, would add a new principle to the criminal jurisprudence of the country, which is without example in its history. For there is no instance of a Judge being invested with a discretionary power to consign a man to infamy by the ríature of the punishment, unless there is something infamous or mean in the crime itself.
 

 When the jury have convicted a person of manslaiigh-
 
 *191
 
 ter, the Court is bound to understand it in the sense of the law, as
 
 <‘
 
 the unlawful killing another without'malice express or implied;” and is bound to apply that punishment which the law adapts to a crime, which arises from the stiddcn heat of the passions, and not from the wickedness of the heart.
 

 The Court cannot aggravate the punishment from a belief that the jury have mistaken the case, and ought to have found it murder; for that would be to usurp their constitutional functions. I have no fear that the Judges of this land would not exercise this discretion with as much discrimination and lenity, as any others in the world; but 1 think it an unsafe rule to confer such a power, by force of a construction, which would introduce an anomaly into the criminal law, which the legislature did not seem to intend. The following sentiments of a great ¡Judge on this subject are worthy of being remembered. « The discretion of a Judge is the law of tyrants; it is always unknown; it is different in different men; it is casual, and depends upon constitution, temper and passion. In the best, it is oftentimes caprice; in the worst, it is every vice, folly and passion to which human nature is liable.” Ld.
 
 Camden.
 

 It may be thought, from the similarity of some expressions in this act with those of the 19
 
 Geo.
 
 3. that the latter was before the framer of the act, and that manslaughter, which is expressly excepted from 1the punishment of whipping by the British statute, is omitted in our act, in order that it might be subject to it. This is possible; but, I think it more probable that the exception was omitted through mistake or inadvertence, arul that the legislature could not have passed it in its present shape, if they had believed it would have borne the construction now contended for.
 

 There have been six sessions of the legislature since the decision in the case of the
 
 State
 
 v.
 
 Kearney,
 
 applying to the act of 181,6 the construction which is still adhered to;
 
 *192
 
 and it is a very reasonable presumption that the members of the successive legislatures were apprised of the determination. Their silence on the subject is a strong reason for believing that they did not disapprove the construction adopted .by the Court; because, upon seyeral other occasions, they have passed laws in consequence of decisions made in this Court. My opinion is, that the judgment, so far as it sentences the defendant to be whipped, should be reversed, and affirmed as to the residue.
 

 Judge Henderson concurred with tins Chiee Justice in opinion.
 

 Hair, Judge,
 

 differed, and assigned his reasons as follows:
 

 In the case of the
 
 State
 
 v.
 
 Kearney,
 
 (1
 
 Hawks
 
 53.) I think the rules of construction were stretched too far. I am still of the opinion that the law would be more wholesome, and founded in better policy, if it was as that, case declares it to be, and did not embrace the case of manslaughter, and for the reasons given by the Court in delivering their opinion in that case; and in a matter of legislation. I would continue to be governed by those reasons; but as an expounder of the law, I confess I think the act of 1816,
 
 New Rev. ch.
 
 918. is broad enough to include the case of manslaughter, and that there is no room left for construction.
 

 It is very trae, that in the
 
 State
 
 v.
 
 Kearney,
 
 the judgment pronounced by the Superior Court was erroneous, because both fine and whipping w7ere ordered, and on that account could not and ought not to have stood; but I do not shelter myself under that part of the case. It seemed to me then, that the opinion given on the act of assembly was correct. I have thought much on the subject since, and from the best consideration I have been able to giye it, I feel myself under the necessity of retracting.
 

 I observe that a similar law passed the British parlia-
 
 *193
 
 nient in the 19
 
 Geo.
 
 3.
 
 ch.
 
 74. In that law manslaughter is excepted. The Court may impose a fine, but cannot order whipping to be inflicted. However desirable it is, that a similar exception had been made in our law, as the legislature have not thought proper to make it, I think the Court would transcend their limits to make it by construction. For these reasons, I think judgment should be entered for the state.
 

 By a majority of the Court,
 

 Judgment reversep*